702 P.2d 1365

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Dan LUTE, Defendant-Appellant.**

**No. 14928.**

Court of Appeals of Idaho.

July 3, 1985.

Laird B. Stone, Alan E. Trimming, and George M. Parham (argued), Ada County Public Defender's Office, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Rinda Ray Just, Deputy Atty. Gen., (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.

While seventeen years of age, Dan Lute was charged as an adult with the crime of

forcible rape. A jury found him guilty. He received an indeterminate life sentence. On appeal, he raises four principal issues: (1) whether the statutes under which he was charged as an adult violated his constitutional rights to due process and equal protection; (2) whether testimony regarding Lute's conduct at trial should have evoked a declaration of mistrial; (3) whether the evidence was sufficient to support the jury's verdict; and (4) whether the indeterminate life sentence represented an abuse of the district judge's discretion. For reasons explained below, we affirm the judgment, including the sentence.

▬ Most unlawful conduct by juveniles falls within the exclusive jurisdiction vested in magistrates under the Youth Rehabilitation Act—title 16, chapter 18, Idaho Code. However, such jurisdiction may be waived, and the juvenile may be tried as an adult, if criteria set forth in I.C. § 16–1806 are satisfied. Moreover, I.C. § 16–1806A provides that exclusive YRA jurisdiction may be bypassed entirely, and juveniles may be charged as adults, for certain violent offenses. Included among the enumerated offenses is the crime of rape. Lute argues that the constitutional guarantees of due process and equal protection require a hearing and the application of waiver criteria when a minor is charged as an adult under I.C. § 16–1806A. The same argument recently was made and rejected in *State v. Anderson*, 108 Idaho 454, 700 P.2d 76 (Ct.App.1985). *Anderson* is dispositive here.

Lute next contends that the district court erred in denying a motion for mistrial. The motion was prompted by testimony by the rape victim's husband. Under questioning by the prosecutor, he stated that during a recess in the trial he observed Lute grinning at him and his wife. Defense counsel did not object immediately to this testimony; rather, he cross-examined the victim's husband concerning the incident. Later, following another recess, counsel moved unsuccessfully for a mistrial, arguing that the testimony had been inflammatory.

▬ The state urges us not to address the question on its merits but instead to hold that defense counsel's failure to object promptly to the testimony waived any claim of error. It is generally true that timely objections must be made to perceived trial errors. *See State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980). However, an exception to this general rule applies in cases of fundamental error, where the constitutional right to a fair trial has been abridged. *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971). As a variation on this theme, our Supreme Court also has held that prosecutorial misconduct may be reviewed on appeal, despite the lack of a timely objection below, if the prosecutor has undertaken "to inflame the minds of jurors and arouse passion or prejudice...." *State v. LaMere,* 103 Idaho 839, 844, 655 P.2d 46, 51 (1982), *quoting State v. Spencer,* 74 Idaho 173, 183–84, 258 P.2d 1147, 1154 (1953). These exceptions, it seems to us, apply with even greater force where, as here, defense counsel has not wholly failed to object to a perceived error but merely has raised the issue tardily in the trial court. We will address the mistrial issue in this case on its merits.

▬ We think it clear beyond cavil that the prosecutor elicited the testimony in question for whatever emotional impact it might have on the jury. Responding to the motion for mistrial, the prosecutor offered no theory upon which the evidence could be deemed relevant to a material issue in the case. Rather, he said:

"[It] is offensive to me, that someone charged with a rape would leer at the rape victim and grin from ear to ear.... I was here. I saw it.... I think it truly reflects an attitude and the actions on the part of the defendant that I think are relevant for a jury to know about."

It has long been established that evidence of a bad "attitude," or of a defendant's seemingly bad character, is inadmissible to prove criminal conduct. *E.g., State v. Henry,* 66 Idaho 60, 154 P.2d 184 (1944); *see*

*generally* Rule 404, Idaho Rules of Evidence. The prosecutor introduced error into the trial by eliciting such testimony.

■■■ However, this does not end our inquiry. Where the denial of a motion for mistrial is challenged on appeal, the issue is whether the event producing the motion represents *reversible* error. *State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct. App.1983). If an error is harmless it provides no occasion for reversal. "The core inquiry ... is whether it appears from the record that the event triggering the mistrial motion contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the event not occurred." *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983). Reasonable doubt would exist if the evidence of guilt were debatable. *State v. Spencer, supra.* But in the present case, we are left with no such doubt. It was undisputed at trial that a rape occurred; the only genuine issue was whether Lute committed it. The evidence tying Lute to the crime was overwhelming. When the rape occurred, Lute was staying with a family near the victim's home. He had met the victim the previous day. The victim unhesitatingly identified Lute as her assailant. She selected his picture from a photographic lineup and she recognized him at trial. She testified that the assailant threatened her with a knife; that he had a dark birthmark on his left arm; and that he wore a gold necklace, a "fishnet" shirt and trousers with deep "painter's" pockets in which he carried a red pack of cigarettes. Lute had such a birthmark. The gold necklace and knife were found in his possession and identified at trial. The state also adduced evidence that Lute was known to wear clothing of the type described, that he smoked a brand of cigarettes sold in red packages, and that he carried the cigarettes in a deep "painter's" pocket of the trousers.

■■■ The only point of uncertainty in the state's case was how much time the rape

incident consumed. The victim estimated that it extended from a few minutes past 6:00 a.m., when her husband went to work, until about 6:45. However, another witness testified that she saw Lute at the neighboring residence at 6:30. In our view, this discrepancy detracts little, if at all, from the strength of the state's case. We conclude that testimony concerning the "smiling" incident did not materially contribute to the verdict. No reversible error has been shown. We further conclude that the evidence was sufficient to support the verdict. Indeed, it could not reasonably have yielded any other outcome.

■■■ Finally, we consider Lute's contention that the district court abused its discretion by imposing an indeterminate life sentence. The state initially responds that this issue is not properly before us because Lute moved for reduction of the sentence, under I.C.R. 35, after filing his notice of appeal. No second or amended notice of appeal was filed after the Rule 35 motion was denied. However, this sequence of events does not preclude us from reviewing the sentence imposed in the judgment. At most, it would merely preclude us from separately reviewing any additional record submitted with the Rule 35 motion. Accordingly, we will confine our examination to the record available when the sentence was imposed.

■■■ Our standards of sentence review are well known. Absent a clear abuse of discretion, a sentence within the statutory maximum will not be disturbed. An indeterminate life sentence is within the maximum penalty for rape prescribed by I.C. 18–6104. An abuse of discretion may be shown where the sentence is unreasonable in light of the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). Reasonableness was explained in *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982):

[A] term of confinement is reasonable to the extent it appears necessary, at the

time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable. Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

For the purpose of appellate review, the duration of confinement under an indeterminate life sentence is deemed to be ten years. *State v. Wilde*, 104 Idaho 461, 660 P.2d 73 (Ct.App.1983).

█ When evaluating an exercise of sentencing discretion, we conduct an independent review of the record. We focus upon the nature of the offense and upon the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982). Here, the state's evidence shows that Lute entered the victim's home while armed with a knife. He made no explicit threat to use the weapon but he displayed it and the victim was fearful. Lute led the victim into a back bedroom, where he directed her to perform fellatio and to have intercourse with him. She complied. Later, he told the victim he was sorry. According to the victim, both knelt and prayed that God would forgive him for what he had done.

█ Although Lute was only seventeen years old at the time of this offense, he had compiled a substantial prior record. He had engaged in auto theft, burglary, and drug abuse. He had been confined in the "closed" unit of a juvenile rehabilitation center in Alaska due to assaultive behavior. Later, having made what the staff inter-preted as a "complete turnaround," he was released to foster care. The instant offense occurred about three months later. A pre-sentence psychiatric evaluation disclosed that Lute had suffered "disastrous" socialization experiences as a child and had developed little "impulse control."

Despite the jury's verdict, Lute continued to deny any involvement in the crime. The district judge expressed concern that Lute seemingly refused to accept responsibility for his actions. The judge also ascribed significance to the premeditated nature of the offense. He considered the possibility of rehabilitation; and for that reason, he selected an indeterminate, rather than fixed, sentence. He stated that his primary concern, in view of Lute's conduct, was the protection of society.

We believe the reasons given by the district judge for the sentence he imposed were sound. Confinement for at least ten years is not an unreasonable safeguard against the pattern of criminal activity exhibited by Lute. Nor does it exceed the length of confinement appropriate for retribution, including vindication of the victim's rights, and for general deterrence. To be sure, the sentence is a strict one. But if Lute earns parole when he becomes eligible for it, he can reenter society while still a young man—with a second chance to make something of his future. We conclude that no abuse of sentencing discretion has been shown.

We have examined other issues raised on appeal and find them to be meritless. The judgment of conviction, including the sentence, is affirmed.

WALTERS, C.J., concurs.

SWANSTROM, Judge, dissenting in part.

I concur in affirming the judgment of conviction. However, I cannot join my colleagues in upholding the indeterminate life sentence pronounced in this case. Considering the circumstances of the offense and the offender, this sentence is the most ex-

treme that we have been asked to review in similar cases. I believe the sentence will result in confinement longer than necessary to accomplish all of the sentencing purposes. Therefore, I respectfully dissent from that part of the opinion which upholds the sentence.